UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x    **FOR PUBLICATION**
                                                    :
In re:                                              :
                                                    :    Case No.: 07-11501 (MG)
      ROBERT SHIVER,                              :    Chapter 7
                                                    :
               Debtor              :
------------------------------------------------------x
                                                    :
EDWARD WHARTON and,                                 :
JANET GEISMAR,                                      :
         Plaintiffs,                         :    Adv. Pro. No.: 07-03070 (MG)
                                                    :
       v.                                      :
                                                    :
ROBERT SHIVER,                                      :
        Defendant.                           :
------------------------------------------------------x

**MEMORANDUM OPINION ON DEFENDANT'S MOTION TO DISMISS AND CROSS MOTIONS FOR SUMMARY JUDGMENT**

**A P P E A R A N C E S :**

DONALD PEARCE, ESQ.
*Counsel for the Plaintiff*
1500 Broadway, 21st Floor
New York, New York 10036
By:    Donald Pearce

SHAPIRO & CROLAND
*Counsel for the Defendant*
Continental Plaza II
411 Hackensack Avenue
Hackensack, New Jersey 07601
By:    John P. DiIorio

**MARTIN GLENN**
**United States Bankruptcy Judge**

This denial of discharge adversary proceeding brought by two judgment creditors,

Edward Wharton and Janet Geismar (collectively "Plaintiffs"), against the chapter 7 debtor,

Robert Shiver ("Shiver" or "Debtor" or "Defendant"), raises the issue of the preclusive effect of

a $3,013,000 Florida state court default judgment for fraud against Shiver.  Shiver moved to

dismiss the adversary complaint, and after a hearing at which the Court deferred ruling on the

motion to dismiss, the Plaintiffs and Shiver filed cross-motions for summary judgment.  The

Plaintiffs seek a judgment pursuant to Bankruptcy Code § 523(a)(2)(A)[1] declaring that the

Florida state court default judgment for fraud ("Judgment") is not a dischargeable debt.

Plaintiffs contend that the full faith and credit statute, 28 U.S.C. § 1738, requires that the Florida

fraud Judgment be given preclusive effect on their Bankruptcy Code § 523(a)(2)(A) claim.  The

Debtor contends that the Judgment should not be given preclusive effect because it was entered

by default without adequate notice or opportunity to defend.  Plaintiffs contend that Florida law

determines whether the Florida default judgment is entitled to preclusive effect and that Florida

courts would give preclusive effect to the Judgment.  Shiver contends that federal law rather than

Florida law controls and that federal law would not give preclusive effect to the Judgment.

For the reasons explained below, the Court concludes that (i) under the full faith and

credit statute, 28 U.S.C. § 1738, Florida law determines whether preclusive effect should be

given to the Judgment, (ii) Florida law would give preclusive effect to the Judgment, and (iii)

because the elements of the Bankruptcy Code § 523(a)(2)(A) denial of discharge fraud claim are

---

[1]      11 U.S.C. § 523(a)(2)(A) provides as follows: "A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insiders' financial condition."

identical to the elements of the Florida common law fraud claims upon which the Plaintiffs

obtained the Judgment, the Judgment bars relitigation of the issues here, thereby entitling

Plaintiffs to summary judgment denying Shiver a discharge of the $3,013,000 claim.

## BACKGROUND

The following material facts are undisputed.  In early 2003 the Plaintiffs began

negotiations with Shiver to sell their fire and burglar alarm business, Hi-Rise Safety Systems,

Inc. ("Hi-Rise") to Aerwav Integration Services, Inc. ("AIS"), a corporation controlled by

Shiver.  (ECF Doc. # 12 at Plaintiffs' Statement of Material Facts About Which There Is No

Genuine Issue Pursuant to Local Rule 7056-1 (hereinafter "Plaintiffs' Rule 7056-1 Statement") ¶

1; ECF Doc. # 14 at Defendant's Responding Statement of Undisputed Material Facts Pursuant

to Local Rule 7056-1(c) and Statement of Additional Undisputed Material Facts In Support of

Cross-Motion For Summary Judgment (hereinafter "Debtor's Rule 7056-1 Statement") ¶ 1.)[2]

The sale ultimately closed in November 2003.  (*Id.*)  In 2005, the Plaintiffs commenced an action

against Shiver in the Circuit Court of the Seventeenth Judicial Circuit in Broward County,

Florida ("Circuit Court") for fraud in the inducement, fraud in the execution and breach of

contract in connection with the sale of Hi-Rise to AIS.  (Plaintiffs' Rule 7056-1 Statement ¶ 2;

Debtor's Rule 7056-1 Statement ¶ 2.)  On October 17, 2005, the Plaintiffs served Shiver with a

revised amended complaint ("Revised Amended Complaint") in the Florida action.  (*Id.* ¶¶ 3, 3.)

The Revised Amended Complaint alleged that Shiver individually represented to them (a) that he

had the expertise to operate a fire alarm and burglar alarm company, (b) that he had the systems

in place to easily absorb the Hi-Rise accounts and to instantly maintain and service the Hi-Rise

accounts, (c) that he would increase Hi-Rise's revenues and the revenues of other entities he

purchased, making the stock granted to the Plaintiffs as part of the sale consideration valuable

---

[2]      Unless otherwise noted, all citations to the docket are to the adversary proceeding, case number 07-03070.

and securing their future payment, and (d) that he would be prudent in expenditures in order to maximize the ultimate future payment to Plaintiffs.  (*Id.* ¶¶ 4, 4.)  The Revised Amended Complaint alleged two fraud claims—fraud in the inducement and fraud in the execution.  (*Id.*) The fraud in the inducement claim alleged that (i) Shiver made certain representations to the Plaintiffs enumerated in the Revised Amended Complaint; (ii) the Plaintiffs relied on these representations in making their decision to sell to Shiver and his companies;[3] (iii) Shiver knew the statements were false at the time they were made; and (iv) Shiver's misrepresentations and further actions caused the Plaintiffs' loss.  (*Id.* ¶ 5−6, 5−6.)  The fraud in the execution claim alleged that (i) Shiver made certain representations to the Plaintiffs enumerated in the Revised Amended Complaint; (ii) the Plaintiffs relied on the representations in entering into the agreements; and (iii) the Plaintiffs have suffered losses as a result of the representations.  (*Id.*) The complaint also included a claim for breach of contract that is not involved in this adversary proceeding.

The case proceeded to be litigated in the state court.  Plaintiffs' emergency motion for the appointment of a receiver was successfully opposed by Shiver through his then-attorney, Gerald B. Wald, Esq. of Murai, Wald, Biondi, Moreno & Brochin, P.A.  (*Id.* ¶¶ 7, 7.)  After the receiver motion was denied but prior to the filing of an answer, Shiver's attorney filed a motion to dismiss the Revised Amended Complaint alleging the complaint failed to state a cause of action under Florida law.  (*Id.* ¶ 7, 7.)  Before the motion to dismiss was decided, however, Shiver's

---

[3]    One of the Debtor's arguments now is that the Judgment should not be given preclusive effect because the Revised Amended Complaint did not allege "*justifiable reliance*," instead simply alleging that Plaintiffs "relied" on Shiver's representations.  As explained below, the Court concludes that justifiable reliance is an element of *both* the Florida common law fraud claims and the § 523(a)(2)(A) fraud claim.  Plaintiffs' failure to include the ritual incantation of the word "justifiable" in the language in the state court complaint does not doom the Plaintiffs to having to start over to plead and prove fraud in this Court.

attorney was permitted by the court to withdraw as counsel because of non-payment of his fees. (*Id.* ¶¶ 8, 8.)

After Shiver's counsel withdrew, the Florida court denied Shiver's motion to dismiss and ordered that he file an answer within ten days.[4]  (*Id.* ¶¶ 9, 9.)  Shiver did not file an answer and, on February 27, 2006, a default judgment was entered against him on liability.  (ECF Doc. #5.) On October 19, 2006, a jury trial was held on damages.  Shiver was not in attendance.  (*Id.* at Exh. F.)  On October 25, 2006, the Florida Circuit Court entered final judgment finding Shiver liable for fraud in the inducement and fraud in the execution with damages in favor of Plaintiffs and against Shiver in the amount of $3,013,000.00.[5]  (ECF Doc. # 5 at Exh. A.)

Shiver admits that he became aware of the Florida Judgment no later than March 2007, approximately three months before he filed his bankruptcy petition.  (Plaintiffs' Rule 7056-1 Statement, ¶ 14; Debtor's Rule 7056-1 Statement, ¶ 14.)  He did not seek relief from the Judgment from a Florida state court before filing his bankruptcy petition.  *Id.*  On May 10, 2007, Shiver filed a voluntarily petition for chapter 7 relief.  On September 20, 2007, Debtor moved to lift the automatic stay to permit him to move to vacate the Judgment in the Florida court.  (Case No. 07-11501, ECF # 29.)  The Plaintiffs opposed the motion.  (Case No. 07-11501, ECF ## 36, 37, 38, 39.)  After additional pleadings were filed by the Debtor and Plaintiffs, on October 25, 2007, the Court granted the motion to lift the automatic stay and required that Shiver commence

---

[4]      The parties dispute whether Shiver was properly served with Wald's motion to withdraw, and with the order denying the motion to dismiss that required Shiver to file an answer within ten days.  Shiver claims that he was not aware that the case had continued, stating that he believed the motion to dismiss was still under consideration until the current bankruptcy case was commenced.  The Plaintiffs contend that Shiver was properly served but failed to respond to the service of process and to the varied efforts of his former counsel to communicate with him.  The Court concludes that these disputed facts are not material to the issues that control summary judgment in this case.

[5]      In the same action, the Florida court awarded Wharton judgment for breach of contract damages of $242,722.87 and awarded Geismar judgment for breach of contract damages of $80,907.66.  The portion of the Judgment for damages for breach of contract is not at issue in this adversary proceeding.

Florida state court proceedings to vacate the Judgment on or before November 30, 2007, which he did. (Case No. 07-11501, ECF # 44.) The parties engaged in discovery in Florida. On May 2, 2008, after an evidentiary hearing, the Florida Circuit Court denied the Debtor's motion to vacate the Judgment. (ECF Doc. # 7 at Exh. 5.)

On October 26, 2007, Plaintiffs filed their adversary proceeding seeking a declaration that the fraud Judgment against Shiver was nondischargeable under 11 U.S.C. § 523(a)(2)(A). The adversary complaint pleads the elements of a § 523(a)(2) claim, including both actual and justifiable reliance, and provides the background giving rise to the Florida litigation and Judgment.

The Debtor filed a motion to dismiss the adversary proceeding pursuant to FED. R. CIV. P. 12(b)(6), made applicable in adversary proceedings by FED. R. BANKR. P. 7012, for failure to state a claim upon which relief can be granted, and pursuant to FED. R. CIV. P. 9(b), made applicable in adversary proceedings by FED. R. BANKR. P. 7009, for failure to plead fraud with particularity. During argument of the motion to dismiss, Debtor's counsel agreed that if the Florida default judgment is entitled to preclusive effect in this case, the adversary complaint adequately pleads a cause of action to deny the discharge.[6] Consequently, the Court concluded that the most efficient way to proceed was for the parties to make cross motions for summary judgment. They did so pursuant to FED. R. CIV. P. 56, made applicable in bankruptcy proceeding pursuant to FED. R. BANKR. P. 7056, and on September 10, 2008, the Court heard argument on those motions. Because the Court grants the Plaintiffs' motion for summary

---

[6]    During the argument the following colloquy took place:
THE COURT: Let me ask you this, Mr. DiIorio. If collateral—if the Court were to determine that collateral estoppel applied, would you agree that the Complaint in this Court adequately pleads the claim for denial of discharge?
MR. DIIORIO: If the determined that collateral estoppel applied, then I would have to say that, yes, the Complaint does adequately plead a cause of action in this court.
Tr., 5/22/2008, at 12 (ECF # 10).

judgment, determining that Plaintiffs are entitled to judgment declaring that Shiver's debt is not

dischargeable, and denies Debtor's cross motion for summary judgment, the Debtor's motion to

dismiss is denied as moot.

## DISCUSSION

### A.  Standards Governing a Summary Judgment Motion

A party is entitled to summary judgment if the record demonstrates that "there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." FED. R. CIV. P. 56.  Summary judgment may be granted only if there exists no genuine

issue of material fact that would permit a reasonable jury to find for the nonmoving party.

*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250 (1986).  A fact is material if it "might affect

the outcome of the suit under governing law." *Id.* at 248.  On a motion for summary judgment,

the moving party has the burden of demonstrating the absence of any genuine issue of material

fact, and all inferences to be drawn from the underlying facts must be viewed in the light most

favorable to the party opposing the motion. *Id.* at 249; *Adickes v. S.H. Kress & Co.*, 398 U.S.

144, 157 (1970); *Rubens v. Mason*, 527 F.3d 252, 254 (2d Cir. 2008).  Once the moving party

has made an initial showing that there is no evidence to support the nonmoving party's case, the

party opposing the motion must come forward with competent summary judgment evidence of

the existence of a genuine issue of fact.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,

475 U.S. 574, 586 (1986).  Courts apply the same standards when considering cross-motions for

summary judgment.  *In re Worldcom, Inc.*, 361 B.R. 675, 681 (Bankr. S.D.N.Y. 2007) (citing

*Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993)).  When, as here, there are

cross motions for summary judgment, the Court alternately draws all factual inferences in favor

of one party and against the party whose motion is under consideration.  *Trident Intern. Ltd. v.*

*Am. Steamship Owners Mut. Prot. and Indem. Ass'n, Inc.*, 2008 WL 2909389, at *2 (S.D.N.Y.

2008) (citing *Tindall v. Poultney High Sch. Dist.,* 414 F.3d 281, 284 (2d Cir.2005) (quotations

and citations omitted)).

**B.  The Florida Judgment Must Be Given Full Faith and Credit**

*1.*  **Florida Law Determines the Preclusive Effect of the Judgment**

The law is well settled that a state court judgment must be given preclusive effect, at least

for collateral estoppel purposes, in a subsequent federal court proceeding if the state in which the

judgment was rendered would do so.  The full faith and credit statute, 28 U.S.C. § 1738**,** provides

in part as follows:

> [The records of state judicial proceedings] shall have the same full
> faith and credit in every court within the United States and its
> Territories and Possessions as they have by law or usage in the
> courts of such State, Territory or Possession from which they are
> taken.

In *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985), the

Supreme Court stated:

> This statute directs a federal court to refer to the preclusion
> law of the State in which judgment was rendered. "It has long been
> established that § 1738 does not allow federal courts to employ
> their own rules of res judicata in determining the effect of state
> judgments.  Rather, it goes beyond the common law and
> commands a federal court to accept the rules chosen by the State
> from which the judgment is taken."  Section 1738 embodies
> concerns of comity and federalism that allow the States to
> determine, subject to the requirements of the statute and the Due
> Process Clause, the preclusive effect of judgments in their own
> courts.

*Marrese*, 470 U.S. at 380 (citations omitted).

*Marrese* addressed how courts should determine the *res judicata* effects of state court

judgments on subsequent matters within the exclusive jurisdiction of the federal courts.  *Id.*  The

Court held that under the full faith and credit statute the preclusive effect of a state court

8

proceeding on a later federal antitrust action had to be decided pursuant to the law of the state in which the judgment was entered despite the fact that the claim was one that could only be brought in federal court.  *Id.*

*Marrese* did not deal with the effect of the full faith and credit statute in a bankruptcy case.  In the earlier case of *Brown v. Felson*, 442 U.S. 127 (1979), the Supreme Court addressed whether a prior state court judgment was entitled to *res judicata* effect in a subsequent denial of discharge proceeding.  In *Brown*, the parties had settled a state court collection action alleging multiple claims, including common law fraud, with a stipulation providing for the entry of a consent judgment.  Neither the stipulation nor the consent judgment indicated the cause of action on which the judgment was based.  *Id.* at 128.  Shortly after the entry of the judgment, the judgment debtor filed a bankruptcy petition and sought to have the judgment debt discharged.  The debtor moved for summary judgment, arguing that *res judicata* barred relitigation of the nature of his debt, since the state court consent judgment was not based on fraud.  The lower courts agreed, concluding that the prior judgment was conclusive as to the nature of debtor's liability.  The Supreme Court reversed, concluding that the prior consent judgment, which did not indicate the basis for liability, did not preclude the judgment creditor from asserting fraud in the bankruptcy court as a basis to deny a discharge of the debt.  The judgment creditor was not asserting a new ground for liability, nor was he attacking the validity of the prior judgment.  *Id.* at 133.  The Court recognized that *res judicata* "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding."  *Id.* at 131.  But, because of the unique nature of a denial of discharge adversary proceeding, the Court rejected application of *res judicata* to the prior consent judgment in the subsequent denial of discharge proceeding.  The Court stated:

> In sum, we reject respondent's contention that res judicata applies here and we hold that the bankruptcy court is not confined to a review of the judgment and record in the prior state-court proceedings when considering the dischargeability of respondent's debt.  Adopting the rule respondent urges would take . . . issues out of bankruptcy courts well suited to adjudicate them, and force those issues onto state courts concerned with other matters, all for the sake of a repose the bankrupt has long since abandoned.  This we decline to do.

*Id.* at 138 (footnote omitted).

While the *Brown* Court made clear that *res judicata* did not apply in a subsequent denial of discharge proceeding, the Court left open whether collateral estoppel applied.  The Court stated in a lengthy footnote:

> This case concerns res judicata only, and not the narrower principle of collateral estoppel. Whereas res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit.  If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17 [concerning denial of discharge], then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court.  Because respondent does not contend that the state litigation actually and necessarily decided either fraud or any other question against petitioner, we need not and therefore do not decide whether a bankruptcy court adjudicating a § 17 question should give collateral-estoppel effect to a prior state judgment.  In another context, the Court has held that a bankruptcy court should give collateral-estoppel effect to a prior decision.  The 1970 amendments to the Bankruptcy Act, however, have been interpreted by some commentators to permit a contrary result.

*Id.* at 139 n.10 (citations omitted).

*Marrese*, while broadly articulating principles dictated by the full faith and credit statute, did not alter the earlier result in *Brown* concerning the application of *res judicata* in bankruptcy cases.  Nor did *Marrese* address the application of the collateral estoppel doctrine, also encompassed within the full faith and credit statute.  But in *Grogan v. Garner*, 498 U.S. 279

(1991), the Supreme Court resolved any lingering doubts whether collateral estoppel applies in denial of discharge adversary proceedings.  The precise issue in *Grogan* was whether § 523(a)(2) "requires a defrauded creditor to prove his claim by clear and convincing evidence in order to preserve it from discharge." *Id.* at 281.  Grogan had obtained a final fraud judgment against Garner in federal court, recovering both compensatory and punitive damages, in a jurisdiction requiring proof of fraud by a preponderance of the evidence. *Id.* at 284.  "If the preponderance standard also governs the question of nondischargeability, a bankruptcy court could properly give collateral estoppel effect to those elements of the claim that are identical to the elements required for discharge and which were actually litigated and determined in the prior action." *Id.* If the clear and convincing standard applied, the prior judgment could not be given collateral estoppel effect. *Id.*  The Court concluded that § 523(a)(2) only requires proof by a preponderance of the evidence.  *Id.* at 287.

Addressing in a footnote the issue left open in *Brown v. Felsen*, 442 U.S. at 139 n.10, whether collateral estoppel applies, the Court stated:

> Our prior cases have suggested, but have not formally held, that the principles of collateral estoppel apply in bankruptcy proceedings under the current Bankruptcy Code.  Virtually every court of appeals has concluded that collateral estoppel is applicable in discharge exception proceedings.  We now clarify that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a).

*Grogan*, 498 U.S. at 285 n.11 (citations omitted).

After *Grogan* there can be no doubt that collateral estoppel can apply in a denial of discharge adversary proceeding.  The full faith and credit statute requires that where the earlier fraud judgment was rendered in a state court, it is the collateral estoppel law of that state that determines the effect to be accorded the state court judgment.  While *Brown*, *Marrese* and

*Grogan* did not involve the preclusive effect of a state court default judgment in a subsequent

federal court action, most particularly a denial of discharge adversary proceeding, there is no

logical reason why different rules apply to default judgments.  Controlling case law from the

Second Circuit—none of which is cited or discussed by Debtor—makes this point abundantly

clear.  Three Second Circuit cases hold that state law controls issue preclusion in bankruptcy

cases whether the state court judgment arose from a fully litigated case or from a default

judgment.  *See Kelleran v. Andrijevic*, 825 F.2d 692, 694 (2d Cir. 1987); *DeTrano v. DeTrano

(In re DeTrano)*, 326 F.3d 319, 322 (2d Cir. 2003); *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir.

2006).

        In *Kelleran*, the court addressed "whether the bankruptcy court's equitable powers

permitted it to disregard the preclusive effect of a state court default judgment where the

judgment was obtained by a creditor without fraud or collusion, but the bankruptcy court finds

the creditor's claims to be 'wholly without merit.'"  *Kelleran,* 825 F.2d at 694.  *Kelleran* arose

from proofs of claim filed by the New York state court judgment creditors who obtained a

default judgment for fraud.[7]  In *Kelleran*, as in this case, the debtor unsuccessfully tried to

reopen the state court default judgment.  *Id.*  The bankruptcy court disallowed the claims finding

the creditors' claims to be "incredible."  *Id.*  The district court affirmed, but the Second Circuit

reversed, rejecting the bankruptcy court's invocation of its equitable powers to set aside the state

court judgment.  "Congress specifically required all federal courts give preclusive effect to state

court judgments whenever the courts of the state from which the judgments emerged would do

so . . . ."  *Id.* at 694 (quoting *Allen v. McCurry*, 449 U.S. 90, 96 (1980) (internal citations

omitted)).  Because New York courts would give preclusive effect to the New York default

---

[7]        In *Kelleran*, the debtor filed his bankruptcy petition after the default judgment on liability was entered, but
before an inquest was held to determine damages.  *Kelleran*, 825 F.2d at 695.  Therefore, damages still had to be
determined on remand to the bankruptcy court.  *Id.*

judgment, the bankruptcy court was required to do so as well. *Id.* As a result, the court held that the bankruptcy court "was bound to the liability determinations in the state judgment unless an exception existed to prevent operation of the judgment's preclusive effect." *Id.* The only recognized exceptions are judgments "procured by collusion or fraud or where the rendering court lacked jurisdiction."[8] *Id.* (citing *Margolis v. Nazareth Fair Grounds & Farmers Market*, 249 F.2d 221, 223−25 (2d Cir. 1957); *Heiser v. Woodruff*, 327 U.S. 726, 736 (1946)). Finding that no exception applied the court granted preclusive effect to the earlier judgment. *Id.* at 695.

The Debtor's counsel did not address *Kelleran* in his briefs, but during oral argument he contended that *Kelleran* does not apply because it involved a claim objection rather than a denial of discharge adversary proceeding. The different procedural context does not provide a basis for applying a different rule for issue preclusion. *DeTrano* and *Evans* make this clear.

In *DeTrano*, the court addressed the collateral estoppel effect of a state court settlement between the parties in a later § 523(a) denial of discharge proceeding. *In re DeTrano*, 326 F.3d 319. The court held that the preclusive effect of the settlement would be determined by whether it arose out of fraud, or like the settlement addressed in *Brown v. Felson*, was not based on any specific cause of action. *Id.* at 322. The Second Circuit remanded the matter to the bankruptcy court to determine the basis of the settlement—if the underlying settlement did arise from fraud, the debt would be nondischargeable. *Id.* at 323. The court stated the rule as follows:

> Where the debt in question is a judgment entered after a claim of fraud has been adjudicated, either party to a subsequent adversary proceeding on nondischargeability can invoke collateral estoppel to establish that the debt is or is not dischargeable under the relevant nondischargeability provision.

326 F.2d at 322.

---

[8]      Debtor's counsel acknowledged in argument that these exceptions do not apply here.

While *DeTrano* did not involve a default judgment, that distinction alone is not sufficient to require a different result. The issue is whether the fraud claim was "adjudicated" in state court, a question the full faith and credit statute commits to applicable state law.

In the most recent of the three Second Circuit cases, *Evans v. Ottimo*, 469 F.3d 278, the judgment creditor obtained a New York state court default judgment for fraud, including both compensatory and punitive damages. The debtor filed a chapter 7 bankruptcy petition. The judgment creditor filed a § 523(a)(2) denial of discharge adversary proceeding. The bankruptcy court refused to give collateral estoppel effect to the default judgment "where the prior judgment obtained in the non-bankruptcy action was obtained by default." *Id.* at 281. The district court reversed, holding that collateral estoppel barred relitigating in bankruptcy court whether the debt was dischargeable. *Id.* at 280. The Second Circuit affirmed the district court, concluding that the debtors were afforded a fair opportunity to litigate the issue of fraud and because the state court necessarily decided the issue. *Id.* Relying on the Supreme Court's decisions in *Grogan* and *Marrese*, and the Circuit's prior decisions in *Kelleran* and *DeTrano*, the court in *Evans* concluded that because New York state courts would give preclusive effect to the New York default judgment, the bankruptcy court was required to do so as well. The court stated:

> It is well settled that preclusion principles apply in bankruptcy proceedings. In *Grogan v. Garner,* the Supreme Court held that where a judgment entailed proof of fraud, the debtor was estopped in a subsequent nondischargeability proceeding from relitigating whether the underlying debt was obtained by fraud. Similarly, we have held that "[w]here the debt in question is a judgment entered after a claim of fraud has been adjudicated, either party to a subsequent adversary proceeding on nondischargeability can invoke collateral estoppel to establish that the debt is or is not dischargeable under the relevant nondischargeability provision."

> We apply the preclusion law of New York. Under New York law, collateral estoppel bars relitigation of an issue when (1)

14

> the identical issue necessarily was decided in the prior action and
> is decisive of the present action, and (2) the party to be precluded
> from relitigating the issue had a full and fair opportunity to litigate
> the issue in the prior action. "The party seeking the benefit of
> collateral estoppel has the burden of demonstrating the identity of
> the issues . . . whereas the party attempting to defeat its application
> has the burden of establishing the absence of a full and fair
> opportunity to litigate the issue." Applying these principles, we
> conclude that the state court's default judgment, grounded in a
> finding of fraud and imposing punitive damages, bars relitigation
> in bankruptcy court of the fraudulent character of the debt.

*Evans*, 469 F.3d at 281 (citations omitted).

The court in *Evans* carefully analyzed New York law on whether the debtor had a full

and fair opportunity to litigate the issue of fraud, concluding that he did. Additionally, the court

analyzed the elements of the New York common law fraud claim on which the judgment was

entered, concluding they are identical to the elements of the § 523(a)(2)(A) denial of discharge

fraud claim. Collateral estoppel is required only if the elements of both claims are identical. As

the court stated:

> The more difficult question is whether the issue of fraud
> under § 523(a) of the Bankruptcy Code was identical to an issue
> that necessarily was decided by the state court. Generally, under
> New York law, "collateral estoppel effect will only be given to
> matters actually litigated and determined in a prior action,"
> because "[i]f an issue has not been litigated, there is no identity of
> issues." "[F]or a question to have been actually litigated so as to
> satisfy the identity requirement, it must have been properly raised
> by the pleadings or otherwise placed in issue and actually
> determined in the prior proceeding." We must determine,
> therefore, whether fraud was placed in issue and actually
> determined in state court, and whether the elements of fraud under
> New York law are identical to the elements of fraud under the
> Bankruptcy Code § 523(a).

*Id.* at 282 (citations omitted).

Applying the *Evans* methodology to this case, the Court must first consider whether

Florida law would give collateral estoppel effect to the Judgment, and then turn to the question

whether the elements of the state and federal claims are identical. Before doing so, however, the Court will address the Debtor's argument that federal law rather than Florida law determines the preclusive effect of a default judgment.

### 2. Federal Law Does Not Give Preclusive Effect to a Default Judgment But It Does Not Apply Here

The Debtor seeks to apply federal law to the decision whether the Judgment should be given preclusive effect. Federal law generally does not give preclusive effect to a default judgment entered by another federal court. The Debtor argues that the Supreme Court has never ruled on whether a state court default judgment should be given preclusive effect, therefore leaving the matter an open question. The Debtor's argument completely ignores the controlling Second Circuit cases—*Kelleran* and *Evans*.

The Debtor relies principally upon a misreading of the Eleventh Circuit decision in *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319 (11th Cir. 1995), and on several bankruptcy court decisions in the Eleventh Circuit that also misread *Bush*. *Bush* raised the issue whether a *federal* court default judgment for fraud should be given preclusive effect in a subsequent bankruptcy court denial of discharge adversary proceeding. *Bush* decided that the bankruptcy court had acted correctly in giving preclusive effect to the federal court default judgment, despite the general federal rule to the contrary, because of the circumstances that resulted in the default judgment in that case—namely, a default judgment entered as a sanction for discovery abuse in a case in which the defendant appeared and defended the action. *Id.* at 1324–25.

The court in *Bush* recognized that state law, and in particular Florida law, may apply a different collateral estoppel rule than federal law normally applies. In *dictum*, the court addressed the analysis in cases involving state court default judgments, noting that Florida state

collateral estoppel law may accord preclusive effect to a default judgment, which a federal court would then apply under § 1738, but left the issue open for the future. *Bush*, 62 F.3d at 1323 n.6.

Whether the issue remains open in the Eleventh Circuit is not pertinent here. This Court is bound by the decisions of the Second Circuit, and *Kelleran*, *DeTrano* and *Evans* make clear that the issue does not remain open here, save to examine the application of Florida law, which is considered further below.

The crucial question is whether the issues were actually litigated in the underlying action. The federal rule generally concludes in the case of a default judgment that the issues were not actually litigated and, therefore, preclusive effect should not be given to the earlier default judgment. *Bush*, 62 F.3d at 1323. The law in other jurisdictions—and, as explained below, including Florida—concludes that, in the case of a properly issued default judgment, the issues may actually have been litigated and, therefore, preclusive effect may be given to the default judgment.

The Debtor also argues that the Court should follow *Angus v. Wald (In re Wald)*, 208 B.R. 516, 520 (Bankr. N.D. Ala. 1997), even though the Debtor recognizes that *Wald* is not binding authority. In *Wald*, the court held that the Supreme Court decision in *Brown v. Felson* created a *res judicata* exception for dischargeability proceedings and that this exception also made collateral estoppel inapplicable to bankruptcy proceedings. *In re Wald*, 208 B.R. at 528. Based on *Wald*, the Debtor argues that federal collateral estoppel law should be applied and the default judgment should not be recognized. Inexplicably, *Wald* relies on *Brown* but fails to discuss the Supreme Court's decision in *Grogan*, which, as discussed above, makes clear that collateral estoppel applies in denial of discharge adversary proceedings. 498 U.S. at 285 n.11. The Court would decline to follow *Wald* even if the issue were not already resolved in this Circuit.

17

The Debtor also relies on *In re Rubin*, 2000 WL 387657 (Bankr. S.D. Fla. 2000).  The
court in *Rubin* declined to give preclusive effect to a Florida state court default judgment.  In
reaching its result, the court relied on a misreading (similar to the Debtor's here) of the Eleventh
Circuit's decision in *In re Bush*, 62 F.3d 1319.  The court stated that "the Eleventh Circuit [in
*Bush*] made it clear that application of the doctrine of collateral estoppel, even in the matter of a
prior state court default, is discretionary with the trial court."  *Rubin*, 2000 WL 387657, at *4.
*Bush* reached no such conclusion with respect to state court default judgments.  The court in
*Rubin* also disagreed with the decision of Chief Judge Mark of the same court in *Lasky v. Itzler
(In re Itzler)*, 247 B.R. 546 (Bankr. S.D. Fla. 2000).  *See Rubin*, 2000 WL 387657, at *4 ("The
Court respectfully declines to follow Judge Mark's position in *Lasky*, in light of the Eleventh
Circuit's statement in *Bush* that application of the doctrine is discretionary with the Court.").  In
a carefully reasoned opinion, Judge Mark reached the opposite result, concluding that Florida
law applied and would give preclusive effect to a Florida state court default judgment.  *Id.* at
547.  *Itzler* is discussed further below in the section analyzing Florida law with respect to issue
preclusion.  *Rubin* is not persuasive authority; *Itzler* is persuasive and will be followed here.

### 3. Florida Law Would Give Preclusive Effect to the Judgment

At this point it is well settled that this Court must look to Florida preclusion law to
determine whether the default judgment controls in the current proceeding.  Under Florida law,
collateral estoppel or issue preclusion applies when (i) the identical issue has been litigated
between the same parties or their privies; and (ii) the matter was fully litigated and determined in
a contest that results in a final decision of a court of competent jurisdiction.  *See, e.g., Dep't of
Health & Rehabilitative Serv. v. B.J.M.*, 656 So.2d 906, 910 (Fla. 1995) ("Collateral estoppel is a
judicial doctrine which in general terms prevents identical parties from relitigating the same
issues that have already been decided.  The essential elements of the doctrine are that the parties

and issues be identical, and that the particular matter be fully litigated and determined in a

contest which results in a final decision of a court of competent jurisdiction. The courts have

emphasized that collateral estoppel precludes relitigation of issues *actually litigated* in a prior

proceeding.") (citations omitted)(emphasis in original); *Bradenton Group, Inc. v. State*, 970

So.2d 403, 408−09 (Fla. Dist. Ct. App. 2007) (quoting *City of Oldsmar v. State*, 790 So.2d 1042,

1046 n.4 (Fla. 2001)).

The Eleventh Circuit and bankruptcy courts in Florida have carefully examined Florida

preclusion law as applied in denial of discharge adversary proceedings. In *In re St. Laurent*, 991

F.2d 672, 675−76 (11th Cir. 1993), the court explained the applicable principles as follows:

> Collateral estoppel, or issue preclusion, bars relitigation of
> an issue previously decided in judicial or administrative
> proceedings if the party against whom the prior decision is asserted
> had a "full and fair opportunity" to litigate that issue in an earlier
> case. Collateral estoppel principles apply to dischargeability
> proceedings. If the prior judgment was rendered by a state court,
> then the collateral estoppel law of that state must be applied to
> determine the judgment's preclusive effect. Under Florida law, the
> following elements must be established before collateral estoppel
> may be invoked: (1) the issue at stake must be identical to the one
> decided in the prior litigation; (2) the issue must have been actually
> litigated in the prior proceeding; (3) the prior determination of the
> issue must have been a critical and necessary part of the judgment
> in that earlier decision; and (4) the standard of proof in the prior
> action must have been at least as stringent as the standard of proof
> in the later case. While collateral estoppel may bar a bankruptcy
> court from relitigating factual issues previously decided in state
> court, however, the ultimate issue of dischargeability is a legal
> question to be addressed by the bankruptcy court in the exercise of
> its exclusive jurisdiction to determine dischargeability.

*Id.* at 675-76 (citations omitted).

In two separate bankruptcy cases, Chief Judge Mark considered the application of issue

preclusion based on Florida state court default judgments. In *Itzler*, the court dealt with a so-

called "pure default" judgment for fraud entered by the state court after the judgment debtor

failed to appear or defend the action. 247 B.R. at 550. Following the judgment debtor's

bankruptcy filing, the judgment creditor commenced an adversary proceeding seeking to deny

the debtor a discharge pursuant to Bankruptcy Code § 523(a)(2). The judgment creditor moved

for summary judgment, arguing that collateral estoppel barred relitigation of the fraud claim.

The court concluded that "[i]f federal collateral estoppel law is applied, then a pure default

judgment, one which arose from no participation of the defendant, is insufficient to have a

preclusive effect. However, if Florida collateral estoppel law is applied, then . . . a pure default

judgment does have preclusive effect." *Id.* at 548 (citations omitted). Judge Mark carefully

analyzed Florida law and derived the following requirements:

> In applying Florida law, Florida cases control. Under
> Florida collateral estoppel law, in order for a judgment to have a
> preclusive effect in a subsequent proceeding, the following
> elements must be met: 1) the parties are identical in the initial and
> subsequent actions; 2) the issues are identical in the initial and
> subsequent actions and 3) the matter has been fully litigated in a
> court of competent jurisdiction.

*Id.* at 550 (citations omitted).

There, as here, the parties in the state court and bankruptcy court were the same. Only

the second and third elements required analysis. The court found the issues identical in both the

state court fraud claim and the denial of discharge adversary proceeding. The identity of the

issues will be analyzed in the next section of this opinion. The more difficult issue in *Itzler* was

whether the default judgment satisfied the "fully litigated" prong. *Id.* at 550 ("The primary issue

in this proceeding is whether the third element of collateral estoppel is met: does the default

judgment . . . in state court constitute a matter that has been 'fully litigated' under Florida law.")

Based on a thorough analysis of Florida state court decisions, including *Avant v. Hammond*

*Jones*, 79 So.2d 423 (Fla. 1955) and *Masciarelli v. Maco Supply Corp.*, 224 So.2d 329 (Fla.

1955), Judge Mark concluded that "the Florida Supreme Court held that collateral estoppel may

be applied even where the prior case is resolved by a pure default judgment." *Id.* at 553. The

court further concluded as follows:

> Thus a pure default satisfies the "fully litigated" element of
> collateral estoppel under Florida law. The fact that Itzler did not
> participate at all in the state court action does not change the fact
> that the issue of fraud was "fully litigated" under Florida collateral
> estoppel principles.

*Id.* at 554.

Here, of course, unlike *Itzler*, Shiver appeared and defended the Florida state court

action, at least for a time. Therefore, the arguments for finding the issues "fully litigated" are

even stronger here. No Florida cases have been cited, and the Court is aware of none, that would

decline to give preclusive effect to a default judgment in circumstances such as those present

here, assuming that the other elements for issue preclusion are satisfied.

Chief Judge Mark wrote another opinion in a case involving the preclusive effect of a

Florida default judgment. In *Hartnett v. Mustelier* (*In re Hartnett*), 330 B.R. 823 (Bankr. S.D.

Fla. 2005), the issue was whether collateral estoppel barred the debtor from discharging child

support debt established in a Florida state court default judgment that established the debtor's

paternity. *Id.* at 824−25. During the bankruptcy case two separate DNA tests confirmed that the

debtor was not the child's father. Therefore, the debtor sought to discharge the debt.

Bankruptcy Code § 523(a)(5) excepts from discharge a domestic support obligation. The court

had to decide whether the paternity judgment should be given preclusive effect. As he had in

*Itzler*, Judge Mark concluded that Florida law applied in determining the effect of the pure

default judgment. *Id.* at 829. Examining Florida law, the court determined that Florida courts

recognize a "manifest injustice" exception to both *res judicata* and collateral estoppel doctrines.

*Id.* at 830−31. The court applied this manifest injustice exception to deny preclusive effect to the

paternity default judgment where two post-petition DNA tests conclusively established that the debtor was not the father of the child on which the support judgment was based. *Id.* at 831−32.

The Court here must consider whether Shiver's factual contentions with respect to the disputed facts regarding service of various Florida state court orders are sufficient to invoke Florida's manifest injustice exception to its collateral estoppel rules. *See supra* note 4. Accepting Shiver's contentions as true for purposes of Shiver's opposition to the motion for summary judgment, the Court nevertheless concludes that there is no basis to invoke the manifest injustice exception to the collateral estoppel rule under Florida law. The reason for this conclusion is that Shiver had an adequate remedy under Florida law and procedure to challenge the default judgment. The Court previously granted the Debtor's motion to lift the automatic stay to permit him to move to vacate the default judgment. Shiver moved pursuant to FLA. R. CIV. P. 1.540(b), essentially the equivalent of FED. R. CIV. P. 60(b), to vacate the default judgment. After discovery and an evidentiary hearing, the Florida Circuit Court denied the motion. (ECF # 7 at Exh. 5.) The Circuit Court's order expressly found that, in serving pleadings and orders, "Plaintiffs and the Court properly relied upon the address that Defendant [Shiver] provided to his counsel, where Defendant thereafter failed to provide any updated or different address to counsel or to the Court." *Id.* In denying the motion to vacate the Judgment, the Circuit Court has already considered and rejected essentially the same arguments that the Debtor makes here for refusing to give preclusive effect to the Judgment in this adversary proceeding. Since the issue whether Debtor has established "manifest injustice" is an issue of Florida law, the Court concludes, even assuming Debtor's factual assertions to be true, he has failed to meet the requirements to invoke this narrow Florida exception to the application of the collateral estoppel doctrine.

22

During argument on the motions for summary judgment, Debtor's counsel advised the

Court that Shiver appealed the order denying the motion to vacate the Judgment but that Shiver

has taken no steps to perfect the appeal.  If the appeal has not been dismissed, assuming that

Florida would permit him to do so, Shiver may seek to perfect his appeal and have the order

denying the motion to vacate the default judgment reversed.  If Shiver succeeds in obtaining

relief from Judgment from the Florida courts, he can seek further relief in this Court.[9]

### 4.  The Issues in the Florida Fraud Claims and the Denial of Discharge Claim Are Identical

The Debtor argues that the elements of the Bankruptcy Code § 523(a)(2)(A) fraud claim

and the Florida common law fraud claims are different, making collateral estoppel inapplicable

in this case.  Specifically, he argues that the § 523(a)(2)(A) claim requires the plaintiff to plead

and prove actual and justifiable reliance, while the Florida common law fraud claims require

actual but not justifiable reliance.  Alternatively, the Debtor argues that even if the Florida

common law fraud claims also require justifiable reliance, the Revised Amended Complaint

failed to plead justifiable reliance and, therefore, a default judgment based on the Revised

---

[9]        In *Itzler*, 247 B.R. at 554, the Court refused to consider the debtor's argument that he was not properly served with the pleadings giving rise to the default judgment.  The court stated that "[i]f this Court was to explore the question of whether or not Itzler was served, it would be effectively reviewing the correctness of the state court's decision to enter a default final judgment." *Id.*  The court premised its ruling on the Rooker-Feldman doctrine. *Id.*  Supreme Court cases since *Itzler* make it apparent that the Rooker-Feldman doctrine is much narrower in scope, dealing only with a federal court's subject matter jurisdiction, and would not apply in denial of discharge adversary proceedings, where subject matter jurisdiction is clear. *See Lance v. Dennis*, 546 U.S. 459, 460 (2006) (*per curiam*); *Exxon Mobil Corp. v. Suadi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  The same result—refusal to review the state court judgment—may arise, however, if the full faith and credit statute applies.  In Shiver's case, because Florida law only gives *res judicata* or collateral estoppel effect to a final order or judgment, *see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 637 F.2d 391, 397 (5th Cir. 1981) ("Under Florida law, a judgment is deserving of res judicata or collateral estoppel effect only if it qualifies as a final judgment.  An interlocutory order in a Florida court has no res judicata effect in a subsequent federal action.")(citations omitted), the order denying the motion to vacate the default judgment would not satisfy the finality requirement under Florida law if the appeal can still be perfected.  Nevertheless, because I previously lifted the automatic stay to permit the Florida courts to resolve whether to vacate the Judgment, this Court will not address the issues that should properly be presented to the Florida courts. *See also In re Gates*, 187 B.R. 426, 431 (Bankr. N.D.N.Y 1995) ("failure to pursue the appellate route to its conclusion precludes him from collaterally attacking the default judgment in this Court").

Amended Complaint cannot be given collateral estoppel effect.[10]  As explained below, the elements of the § 523(a)(2)(A) claim and the Florida common law fraud claims are identical. And, the failure separately to plead actual and justifiable reliance in the Revised Amended Complaint is not fatal to the application of collateral estoppel to the Judgment.

The elements of a § 523(a)(2)(A) fraud claim are well established.  "The elements of actual fraud under Bankruptcy Code incorporate the general common law of torts and likewise include a false representation, scienter, reliance, and harm."  *Evans*, 469 F.3d at 283 (citing RESTATEMENT (SECOND) OF TORTS § 525 ("One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation."); *Field v. Mans,* 516 U.S. 59, 70 n.9 (1995) ("We construe the terms in § 523(a)(2)(A) to incorporate the general common law of torts, the dominant consensus of common-law jurisdictions, rather than the law of any particular State.")); *In re Hunter*, 780 F.2d 1577, 1579 (11th Cir. 1986); *Taub v. Morris (In re Morris)*, 252 B.R. 41, 48 (Bankr. S.D.N.Y. 2000); *Nate B. & Francis Spingold Found., Inc. v. Halperin (In re Halperin)*, 215 B.R. 321, 334 (Bankr. E.D.N.Y. 1997); *Itzler*, 247 B.R. at 550; 4 COLLIER ON BANKRUPTCY ¶ 523.08[1][e] (15th ed. rev. 2008).  The Restatement of Torts requires both actual and justifiable reliance.  RESTATEMENT (SECOND) OF TORTS § 537 ("The recipient of a fraudulent misrepresentation can recover against its maker for pecuniary loss resulting from it if, but only if, (a) he relies on the misrepresentation in acting or refraining from action, and (b) his reliance is justifiable.").

---

[10]      The only argument Debtor makes disputing the identity of issues requirement is with respect to justifiable reliance.  Thus, the Court is not required to compare other elements of the § 523(a)(2)(A) claim and the Florida common law fraud claims, such as occurred in *Schneiderman v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 111 (2d Cir. 2002).

Contrary to Debtor's contention here, Florida law likewise requires both actual and justifiable reliance to support a common law fraud claim. *Thor Bear, Inc. v. Crocker Mizner Park*, 648 So. 2d 168, 172 (Fla. Dist. Ct. App. 1994) ("The elements necessary to establish a cause of action for fraudulent misrepresentation are: (1) a false statement or misrepresentation of a material fact; (2) the representor's knowledge at the time the misrepresentation is made that such statement is false; (3) such misrepresentation was intended to induce another to act in reliance thereon; (4) action in justifiable reliance on the representation; and (5) resulting damage or injury to the party so acting.") (citing *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985)); *Eastern Cement v. Halliburton Co.*, 600 So. 2d 469, 470-71 (Fla. Dist. Ct. App. 1992) (same). *Johnson v. Davis*, 480 So. 2d 625, upon which these cases rely, in part, phrases the elements of common law fraud differently, without separately identifying justifiable reliance as an element, but justifiable reliance was not an issue in the case. *Id.* at 627 ("In the state of Florida, relief for a fraudulent misrepresentation may be granted only when the following elements are present: (1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and, (4) consequent injury by the party acting in reliance on the representation.").

Federal courts applying Florida law have concluded that the elements under § 523(a)(2)(A) and Florida common law fraud claims are identical. *St. Laurent, II, v. Ambrose (In re St. Laurent)*, 991 F.2d at 676 ("The elements of common law fraud in Florida closely mirror the requirements of section 523(a)(2)(A) and hence are sufficiently identical to meet the first prong of the test for collateral estoppel.") (internal quotes omitted).

Indeed, Shiver's Florida counsel argued in the motion to dismiss the Revised Amended Complaint that justifiable reliance is an element of common law fraud under Florida law. *See*

Defendant Robert Shiver's Motion to Dismiss the Revised Amended Complaint (ECF # 7 Exh. 2

at 9-10) ("The elements necessary to establish a cause of action for fraud or misrepresentation

are : (1) a false statement or misrepresentation of a material fact; (2) the representor's knowledge

at the time the misrepresentation is made that such statement is false; (3) such misrepresentation

was intended to induce another to act in reliance thereon; (4) action in justifiable reliance on the

representation; and (5) resulting damage or injury to the party so acting.").  The motion to

dismiss the fraud claim did *not* argue that the Revised Amended Complaint failed to plead

justifiable reliance.  And the Debtor has not cited any Florida cases requiring that actual and

justifiable reliance be pleaded separately.  If Shiver had defended and put the Plaintiffs to their

proof, rather than defaulted, Plaintiffs would have been required to prove both actual and

justifiable reliance.  Having defaulted, however, Shiver cannot challenge any issues or facts

necessary to support the Judgment.  *Dept. of Health & Rehabilitative Serv. Office of Child*

*Support Enforcement v. Wood*, 600 So.2d 1298, 1300 (Fla. Dist. Ct. App. 1992) ("When a fact in

issue or a cause of action has been finally decided by a court of competent jurisdiction, neither of

the parties shall be allowed to relitigate so long as the judgment or decree stands unreversed.

This principle applies to default judgments, issues raised in defense, and matters raised by

motion."); *Martino v. Florida Ins. Guar. Ass'n*, 383 So.2d 942, 944 (Fla. Dist. Ct. App. 1980)

(holding party that participated in prior proceeding was bound by the determination of the rights

of the parties by the default judgment); *Perez v. Rodriguez*, 349 S.2d 826, 827 (Fla. Dist. Ct.

App. 1977) ("The law is clear that a default judgment conclusively establishes between the

parties, so far as subsequent proceedings on a different cause of action are concerned, the truth of

all material allegations contained in the complaint in the first action and every fact necessary to

uphold the default judgment . . . .").  Shiver's motion to dismiss the fraud claims was denied by

the Circuit Court.  He cannot get a second bite at the apple by arguing now—as he failed to do in

the state court—that the fraud claims failed to state a cause of action because they did not

separately break out allegations of actual and justifiable reliance.[11]

In deciding whether to give preclusive effect to a state court judgment, federal courts do

not evaluate the merits of the state law claims.  *Kelleran*, 825 F.2d at 694, makes the point

clearly as the court reversed the bankruptcy court that had found the state court claim that gave

rise to the default judgment to be "wholly without merit" and "incredible."  The bankruptcy

court's review is limited to determining whether the state law elements for collateral estoppel are

satisfied, unless the judgment was "procured by collusion or fraud or where the rendering court

lacked jurisdiction."  *Kelleran*, 825 F.2d at 694.

The Debtor argues that other decisions in this Circuit support a more searching review of

the facts and record and provide the bankruptcy court with discretion whether to give preclusive

effect to a state court default judgment.  In *Neshewat v. Salem* (*In re Salem*), 290 B.R. 479, 484

(S.D.N.Y. 2003), the district court affirmed the bankruptcy court's order denying debtor a

discharge based on a New York state court default judgment for malicious prosecution obtained

by his brother.  The adversary proceeding was one of many cases between the two brothers.  The

judgment creditor argued and the bankruptcy court found after a trial that the default judgment

established "willful and malicious injury" under Bankruptcy Code § 523(a)(6).  It was not clear

from the state court judgment whether the elements of the malicious prosecution claim and the §

523(a)(6) denial of discharge claim were identical.  Therefore, the bankruptcy court held a trial

limited to the "willful and malicious injury" issue alone, and concluded that the judgment

---

[11]    Plaintiffs argue and the Court agrees that the material facts alleged in the Revised Amended Complaint
would support a finding of justifiable reliance.  The label attached ("Plaintiffs relied") or omitted ("justifiably
relied") cannot control, particularly in a case where Shiver filed a motion to dismiss in state court and did not raise
the issue of a defect in the form of the pleading.

creditor established the element by a preponderance of the evidence. *Id.* at 485−86. The

bankruptcy court had also denied the debtor's motion for summary judgment, based on debtor's

argument that the state court default judgment should not have been given preclusive effect

because of an earlier judgment in a lawsuit between the two brothers in a Michigan federal

district court. The Debtor's state court appeal from the New York default judgment had been

dismissed. The district court stated as follows:

> The issue before this Court is whether the Bankruptcy
> Court properly denied summary judgment. We conclude that it
> did. The validity and enforceability of the state court judgment
> was not an issue for the Bankruptcy Court to decide. Whether the
> state court judgment was right or wrong as a matter of fact or law,
> the judgment should have been and was accorded full faith and
> credit by the Bankruptcy Court. The issue before the Bankruptcy
> Court was not whether the state court decision was correct, but
> whether the state court judgment was dischargeable under §
> 523(a)(6).

290 B.R. at 482 (citation omitted).

This statement from *Salem* is unexceptional, and consistent with later case developments

in this Circuit. The district court, however, supported the bankruptcy court's making a searching

review "beyond the prior court record and evaluate all the evidence in order to determine

independently the question of dischargeability." *Id*. at 484. To the extent that § 523(a)(6)

included an element not established by the state court default judgment—something that is not

clear from the opinion—conducting a trial to determine that element of the claim would be

necessary. If all of the elements of the state law and denial of discharge claims were identical—

as is true here—undertaking such an evidentiary hearing would be inappropriate in light of the

Second Circuit's earlier decision in *Kelleran*, 825 F.2d at 694, not discussed in *Salem*, and later

decisions, one month later in *DeTrano*, 326 F.3d at 322, and three years later in *Evans*, 469 F.3d

at 281.

28

The district court in *Salem* and the Debtor here also rely on *In re Capparelli*, 33 B.R. 360, 363 (Bankr. S.D.N.Y. 1983), which held that in determining the dischargeability of a judgment, bankruptcy courts can evaluate a state court's findings and any additional sources of evidence introduced at trial, or in the adversary proceeding, and weigh that evidence against the prior record to reach its own conclusions. *Capparelli* was decided after *Brown* but before *Marrese* and *Grogan*. It was also decided before *Kelleran*, *DeTrano* and *Evans*. *Capparelli* does not state the law as it has since developed in this Circuit.

The Debtor also relies on Chief Judge Bernstein's decision in *Taub v. Morris (In re Morris)*, 252 B.R. 41, denying collateral estoppel effect to a prior Montana state court default judgment entered after Morris unsuccessfully moved to dismiss the state court action but then failed to defend. *Id.* at 44. Relying on *Kelleran* and other cases, the court said that "[a] federal court, including a bankruptcy court, must accord a state court judgment the same preclusive effect it would be accorded by the rendering state." *Id.* at 47. Carefully analyzing Montana law, the court concluded that Montana law does not give preclusive effect to a default judgment. *Id.* at 47–49. The Debtor ignores this crucial distinction between *Taub* and this case—namely, that Florida gives preclusive effect to a default judgment while Montana does not. Even without the benefit of collateral estoppel, the judgment creditor in *Taub* tried to rely on admissions in the state court pleadings. The court found that the judgment creditor failed to authenticate the pleadings, thus preventing any evidentiary support from the complaint, and, in any event, the allegations in the state court complaint did not make clear whether negligence or fraud was alleged. *Id.* at 49. A denial of discharge under § 523(a)(2)(A) requires actual fraud; negligence will not suffice. *Taub* is inapposite to the issues presented here.

Finally, the Debtor also cites *In re Halperin*, 215 B.R. 321, 336 (Bankr. E.D.N.Y. 1997). The case is distinguishable because the underlying New York judgment did not include a finding of actual fraud. Instead, it made reference to fraudulent transfers not requiring proof of actual fraud. *Id.* The state court judgment did not satisfy the identity of issues requirement.

The Court concludes that the elements of a denial of discharge claim under § 523(a)(2)(A) and the elements of the Florida common law fraud claims included in the Revised Amended Complaint are identical. The failure to include the label of "justifiable reliance" in the Revised Amended Complaint does not except the Judgment from the preclusive effect that Florida courts would give to the default judgment.

## CONCLUSION

The Plaintiffs have satisfied all of the requirements of Florida law for the Judgment to be given collateral estoppel effect in this denial of discharge adversary proceeding. The two actions are between the same parties. The fraud claims were "fully litigated" in the Florida action, a court of competent jurisdiction with personal jurisdiction over the parties. The issues in the § 523(a)(2)(A) denial of discharge claim and in the Florida common law fraud claims were identical. The Judgment is final. Shiver tried unsuccessfully to get the Circuit Court to vacate the default judgment. If Shiver can still perfect his appeal from the order denying the motion to vacate the default judgment, he may do so, but it is not the role of this Court to second guess the decision of the Florida courts. If Shiver succeeds in vacating the Judgment, he can ask this Court for relief from the denial of discharge of the underlying debt. The allegedly disputed facts regarding the service of various pleadings and orders of the Circuit Court are not material to the issues properly before this Court on the pending motion to dismiss or cross-motions for summary judgment. Therefore, Plaintiffs motion for summary judgment is **GRANTED**. Debtor's cross-

motion for summary judgment is **DENIED**.  The motion to dismiss is **DENIED AS MOOT**.

The Court hereby determines that Shiver's debt to the Plaintiffs arising from the fraud counts of

the Judgment shall not be subject to discharge in Debtor's chapter 7 case.

Plaintiffs' counsel shall settle a judgment consistent with this opinion pursuant to Local

Rule 9074-1.

DATED:  November 5, 2008
     New York, New York


        **/s/Martin Glenn**
        MARTIN GLENN
      United States Bankruptcy Judge